UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA CHISHOLM, | ) | CASE NO. 1:16CV2917 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Plaintiff Brenda Chisholm ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB"), Disabled Widow's Benefits ("DWB"), and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on May 2, 2017, Plaintiff asserts that: (1) the administrative law judge ("ALJ") erred in the evaluation of the impact of her peripheral vascular disease and in determining she had the capacity to perform light work; and (2) that new and material evidence warrants remand. ECF Dkt. #14. Defendant filed a response brief on July 17, 2017. ECF Dkt. #17. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I.    PROCEDURAL HISTORY

In January 2014, Plaintiff filed an application for DIB. ECF Dkt. #10 ("Tr.") at 168.[2] The claim was denied initially and on reconsideration, and Plaintiff requested a hearing before an ALJ. *Id.* at 73, 81. Prior to the hearing, Plaintiff filed applications for DWB and SSI, which were

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

consolidated with her DIB application.  *Id.* at 179.  The hearing was held on November 30, 2015.  *Id.* at 32.  On January 22, 2016, the ALJ issued an unfavorable decision.  *Id.* at 10.  Following the ALJ's decision, the Appeals Council denied Plaintiff's request for review.  *Id.* at 1.  Accordingly, the ALJ's January 22, 2016, decision stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's decision on December 4, 2016.  ECF Dkt. #1.  On May 2, 2014, Plaintiff filed a brief on the merits.  ECF Dkt. #14.  Defendant filed a response brief on July 17, 2017.  ECF Dkt. #17.  Plaintiff did not file a reply brief.

## II.    RELEVANT PORTIONS OF THE ALJ'S DECISION

In the decision, the ALJ indicated that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2011.  Tr. at 16.  The ALJ noted that it was previously found that Plaintiff was the unmarried widow of a deceased insured worker and had reached the age of fifty.  *Id.*  Continuing, the ALJ stated that Plaintiff met the non-disability requirements for DWB set forth in § 202(e) of the Social Security Act.  *Id.*  The ALJ indicated that the prescribed period ends on January 31, 2021.  *Id.*

Next, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 11, 2009, the alleged onset date.  Tr. at 16.  The ALJ found that Plaintiff had the following severe impairments: peripheral artery disease with claudication and history of failed angiographies; left great toe amputation; osteoarthritis of the left ankle; polymyalgia; asthma/chronic obstructive pulmonary disease, secondary to smoking; and obesity.  *Id.*  Continuing, the ALJ indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 18.

After consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1527(b) and 416.967(b), with the following additional limitations: occasionally climb ramps and stairs; never climb ladders and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never be exposed to unprotected heights or moving mechanical parts; never operate a motor vehicle; and frequently be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, or extreme heat.  Tr. at 19.

Following the RFC finding, the ALJ stated that Plaintiff was unable to perform any past relevant work. *Id.* at 25.

The ALJ then indicated that Plaintiff was a younger individual on the alleged disability onset date, but subsequently changed age category to an individual closely approaching old age. Tr. at 26. Continuing, the ALJ stated that Plaintiff had at least a high school education, was able to communicate in English, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Based on the reasons stated above, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 11, 2009, through the date of the decision. *Id.* at 27.

## III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.**     **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## V. LAW AND ANALYSIS

### A. RFC Finding

Plaintiff first asserts that the ALJ erred in the evaluation of the impact of her severe peripheral vascular disease and in determining that she had the RFC to perform the standing and walking required for light work. ECF Dkt. #14 at 9-19. Specifically, Plaintiff argues: (1) her treating physician's treatment notes prove that she cannot perform the standing and walking required by light work; (2) the ALJ erred in the evaluation of her pain and its impact on her ability to stand and walk; and (3) the record supports her use of a cane or walker. *Id.*

#### 1. Light Work

First, Plaintiff states that none of her treating physicians provided a treating-source statement, she was not examined by the Social Security Administration, and the reviewing physicians only addressed her condition prior to September 30, 2011, her date last insured. ECF Dkt. #14 at 10. After discussing the relevant medical evidence, Plaintiff states that the medical evidence and the ALJ's finding of claudification as a severe impairment undermine the ALJ's determination that she could perform light work. *Id.* at 11. Plaintiff states that the ALJ only gave persuasive weight to the findings of her surgeon, Sunita Srivastava, M.D., but did not address the portions of Dr. Srivastava's opinion, or other opinions, showing that she had significant restrictions in her ability to stand and walk. *Id.* at 12. Continuing, Plaintiff avers that she was treated by multiple doctors at the Cleveland Clinic, yet their opinions were not viewed as part of the intended team approach to her treatment. *Id.* (citing *Pater v. Comm'r of Soc. Sec.*, No. 1:15CV1295, 2016 WL 3477220, *16 (N.D. Ohio June 27, 2016)).

Plaintiff then asserts that the ALJ did not adequately consider that: testing showing moderate disease of the lower extremities at rest bilaterally; bypass was advised; her left foot remained swollen months after the toe was amputated; she continued to experience bilateral foot edema and decreased motion of the left ankle; she attempted walking as recommended; her bilateral lower extremity pain with ambulation was consistent with claudication; and she ambulated at times with a rolling walker. *Id.* at 13. In sum, Plaintiff claims that the ALJ did not adequately account for the evidence that conflicts with the RFC finding that she could perform light work. *Id.* at 14.

Defendant contends that no doctor opined that Plaintiff had greater walking and standing limitations as a result of her peripheral vascular disease. ECF Dkt. #17 at 9. Continuing, Defendant asserts that the "opinions" Plaintiff refers to in her brief are, for the most part, her subjective complaints. *Id.* As for the doctors' statements that are not echoing Plaintiff's subjective complaints, Defendant states that the statements are not specific enough to undermine the ALJ's findings regarding Plaintiff's ability to stand and walk. *Id.* First, Defendant indicates that Plaintiff states that treatment notes show that she had the "ability to walk only 10 to 15 feet," but that the treatment notes actually state that she could only walk ten to fifteen feet before she experienced aching discomfort in her lower extremities. *Id.* (citing Tr. at 348). Additionally, Defendant points out that the statement about Plaintiff's ability to walk was her own description rather than a doctor's opinion of her functioning, and thus was not an opinion that ALJ was required to weigh. *Id.* at 9-10 (citing Tr. at 347-48). Defendant also states that Plaintiff's characterization of tightness in her legs as a medical opinion is also mistaken since it was based on her own reporting, not a doctor's assessment, and that she failed to include that she also reported improved leg symptoms at that same appointment. *Id.* at 10 (citing Tr. at 415). Additionally, Defendant asserts that Plaintiff's reliance on her toe amputation is misplaced because it was a procedure, not an opinion, and that the ALJ noted the amputation and that it was healing well two months later. *Id.* Defendant also states that the ALJ discussed Plaintiff's subsequent treatment, during which she was repeatedly urged to walk and did walk independently. *Id.* (citing Tr. at 21-23).

Continuing, Defendant avers that even if the assessment of John Patzaki, D.O., indicating "lifestyle limiting claudation" is considered a medical opinion, it does not undermine the RFC finding because the ALJ limited Plaintiff to light work with additional physical limitations. ECF Dkt. #17 at 10 (citing Tr. at 11, 341). Defendant states that the limitations assessed by the ALJ recognized that PLaintiff's lifestyle was limited by her physical impairments. *Id.* at 10-11. Responding to the Plaintiff's argument that the ALJ "cherry picked" evidence from the record, Defendant asserts that the ALJ thoroughly reviewed all of the evidence and resolved any conflicts therein. *Id.* at 11.

The argument presented by Plaintiff is without merit. Plaintiff sets forth evidence that she claims was not adequately considered by the ALJ, essentially arguing that the ALJ's decision was not based on substantial evidence. However, the substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole*, 661 F.3d at 937 (internal citation omitted). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found the claimant disabled.

A review of the decision shows that the ALJ went into great detail when discussing the record of Plaintiff's physical impairments. *See* Tr. at 19-25. Plaintiff relies heavily on her own subjective complaints for evidence that the ALJ did not consider, however, for the reasons discussed below, the ALJ properly found that she was less than fully credible. *See* ECF Dkt. #14 at 11 (citing Tr. at 343, 347-48, 415). As such, the ALJ did not err when Plaintiff's subjective complaints were not specifically addressed in the decision. Plaintiff does cite some treatment notes regarding her impairments, however, the ALJ was not obligated to specifically address every item in the record and the Court is required to affirm the Commissioner's findings if they are supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cole*, 661 F.3d at 937 (internal citation omitted).

The ALJ's decision is supported by substantial evidence. After carefully addressing the medical evidence presented in this case, the ALJ explained the weight assigned to each opinion. Tr. at 19-25. The ALJ also made several notable findings, including: Dr. Srivastava's April 2015 assessment that Plaintiff had no limitations in activity; Plaintiff's history of medication and treatment noncompliance, as well as gaps in treatment; and Plaintiff's activities of daily living, which undermined the level of impairment described in her testimony. *Id.* at 24-25.

Further, Plaintiff does not explain how the ALJ failed to recognize the intended team approach to her treatment at the Cleveland Clinic. *See* ECF Dkt. #14 at 12. The ALJ detailed Plaintiff's treatment at the Cleveland Clinic, including the fact that she was seen by multiple physicians over the course of said treatment. *See* Tr. at 20-24. Plaintiff claims that the ALJ failed

to take into consideration a portion of these treatment notes citing the findings of "lifestyle-limiting claudation" and the "ability to walk only 10 to 15 feet." ECF Dkt. #14 at 12 (citing Tr. at 341-42, 347-48). As discussed above, the treatment note indicating that Plaintiff was only able to walk ten to fifteen feet was based on her own subjective complaint. *See* Tr. at 347-48. As far as the finding of lifestyle-limiting claudation, Plaintiff fails to explain how the ALJ did not account for such a finding. Indeed, the ALJ limited Plaintiff to light work with additional restrictions, reflecting that she was more limited than an individual of her age without any physical impairments. *See* Tr. at 19. Accordingly, Plaintiff has failed to show that the ALJ's decision is not supported by substantial evidence.

## 2. Credibility

Next, Plaintiff asserts that the ALJ erroneously concluded that her reported symptoms were not entirely credible. ECF Dkt. #14 at 14. Plaintiff states that it appears that the ALJ dismissed her complaints of pain primarily because of the objective evidence, medical noncompliance, and her continued smoking. *Id.* at 16. Continuing, Plaintiff avers that the objective evidence supports her allegations of pain and that there is no evidence that her supposed medical noncompliance impacted her pain. *Id.* at 16-17. Plaintiff then reiterates portions of her hearing testimony regarding her abilities. *Id.* at 17. Additionally, Plaintiff claims that the ALJ's emphasis on isolated instances where she failed to walk as much as recommended and continued smoking is misleading and distorts the evidence without also considering that she later attempted to walk, participated in physical therapy, and underwent an amputation and additional surgeries. *Id.* Plaintiff again argues that the ALJ engaged in a selective reading of the record. *Id.* Finally, Plaintiff states that while her pain may not be consistent with total disability, it does prohibit prolonged standing and walking, restricting her to sedentary activities and providing for a finding of disability pursuant to the Medical-Vocational Rules. *Id.* at 18.

Defendant maintains that the ALJ considered Plaintiff's subjective complaints of pain and reasonably found them not fully believable. ECF Dkt. #17 at 11. Continuing, Defendant properly asserts that ALJs are not required to accept a claimant's subjective complaints and the findings about a claimant's credibility are afforded great weight and deference. *Id.* (citing *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). Defendant avers that while Plaintiff cites some pieces of medical evidence she claims support her complaints, she engages in the same "cherry picking" for which she chides Defendant. *Id.* at 12. However, according to Defendant, the question is not whether there is substantial evidence to support Plaintiff's allegations, but is instead whether the ALJ's conclusions are supported by substantial evidence. *Id.* at 13 (citing *Jones*, 336 F.3d at 477). Continuing, Defendant claims that some of the evidence cited by Plaintiff is not persuasive, noting that Plaintiff cited a planned arterial bypass procedure, but failed to note that the procedure was never performed and that Dr. Srivastava indicated that her condition was not severe enough to justify the surgery. *Id.* (citing Tr. at 409).

Next, Defendant states that the ALJ also discounted Plaintiff's statements due to her long history of treatment and medication noncompliance, which is a proper factor in determining credibility. ECF Dkt. #17 at 13 (citing Social Security Ruling ("SSR") 96-7p). Defendant asserts that Plaintiff: was frequently noncompliant with her walking program, but reported improvement when compliant; missed physical therapy appointments and had not scheduled therapy as recommended; was frequently noncompliant with various medications; and continued to smoke, and refused to reduce her smoking, despite being repeatedly informed that quitting could help relieve her symptoms and improve her overall health. *Id.* at 13-14 (citing Tr. at 53-54, 293, 306, 308, 342, 363-65, 372, 415, 440, 448, 458-59, 469, 501). Regarding Plaintiff's contention that there was no evidence her supposed noncompliance impacted her pain, Defendant states that her doctors presumably would not have prescribed the treatments if they did not think it would benefit her. *Id.* at 14. Defendant asserts that the ALJ was entitled to make the reasonable inference that compliance with treatment would have improved Plaintiff's symptoms. *Id.* (citing *Kyle v. Comm'r of Soc. Sec.*, 609 F.ed 847, 854-55 (6th Cir. 2010)). Finally, Defendant states that if Plaintiff was truly as limited as she alleged, it would be expected that she follow recommendations designed to lessen her pain. *Id.* (citing *Strong v. Soc. Sec. Admin.*, 88 Fed.Appx. 841, 846 (6th Cir. 2004)).

The ALJ's determination regarding Plaintiff's credibility is supported by substantial evidence. When evaluating the intensity and persistence of a claimant's symptoms, ALJs are to consider all of the available evidence from medical and non-medical sources, including: medical

opinions; the objective medical evidence; daily activities; the location, duration, and frequency of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications; treatment received for symptoms other than medication; measures taken to relieve pain symptoms; and other factors concerning the functional limitations and restrictions due to pain.[3] *See* 20 C.F.R. § 404.1529(c)(2)-(4).

At the hearing, Plaintiff testified that she had extreme limitations. For example, Plaintiff stated that: her daughter and grandchildren ran her errands and did her laundry; she did not "go[] anywhere really" because she was scared of falling; and she did nothing without her walker. Tr. at 41-42, 47, 50. In the decision, the ALJ found Plaintiff's activities of daily living and testimony to be partially credible concerning her symptoms of impairment and overall allegations of disability. *Id.* at 24. Continuing, the ALJ stated:

> [Plaintiff] testified that she sometimes walks across the street and shops at the dollar store, and enjoys watching TV, playing cards with her grandchildren, socializing with neighbors, as well as talking, texting, and playing games on her phone. While [Plaintiff] testified that she must walk across the street with a walker as she has fallen in the past, the longitudinal medical record does not reveal any prescription or recommendation that [Plaintiff] use a cane or walker. Additionally, in July 2015, pain management noted [Plaintiff] was steady without assistive devices.

*Id.*

The ALJ also indicated that Plaintiff had a long history of medication and treatment noncompliance, as well as some gaps in treatment, which demonstrated a possible unwillingness to do what was necessary to improve her condition. Tr. at 24. As an example, the ALJ cited treatment notes indicating that Plaintiff was noncompliant with her blood pressure medication and was only interested in having her bus pass renewed when she appeared for treatment. *Id.* (citing Tr. at 300). The ALJ also cited numerous other occasions on which Plaintiff reported that she was noncompliant with medications. *Id.* Additionally, the ALJ stated that as of the date of the hearing, Plaintiff had not scheduled physical therapy appointments despite several referrals and recommendations to begin therapy. *Id.* The ALJ also noted that Plaintiff had been routinely advised to stop smoking since

---

[3]Plaintiff also refers to SSR 16-3p, however, this regulation became effective on March 28, 2016, over two months after the ALJ issued the decision, and is therefore not applicable in this case. *See* ECF Dkt. #14 at 15.

2010, yet she continued to smoke half a pack of cigarettes per day.  *Id.*  Continuing, the ALJ indicated that Plaintiff: had not tried her walking regimen; refused invasive therapy because she did not feel that here ambulation limitations were so severe as to warrant the therapy; and provided inconsistent reports at the hearing and in 2014 regarding taking anti-depressants, despite the medical record failing to evidence any reports of depression since September 2010.  *Id.*  Based on the above, the ALJ found:

> While there is no doubt that severe medical impairments exist, the extent of [Plaintiff's] daily activities coupled with continued treatment noncompliance tends to undermine the level of impairment [Plaintiff] described in her testimony.

*Id.*

The ALJ reasonably found Plaintiff less than fully credible.  As stated above, the ALJ thoroughly reviewed the evidence in this case, as contemplated in 20 C.F.R. § 404.1529(c)(2)-(4), and then sufficiently explained why Plaintiff was determined to be less than fully credible.  The ALJ indicated that Plaintiff testified to severe limitations and a high level of pain, yet had a history of noncompliance with treatment and medication recommendations, performed activities of daily living inconsistent with her alleged limitations, and continued to smoke heavily despite being advised frequently that her condition would likely improve if she quit.  *See* Tr. at 24.  Additionally, the ALJ pointed out that as recently as July 2015, approximately four months prior to the hearing, Plaintiff had presented for pain management and displayed a gait that was steady without assistive devices. *Id.* (citing Tr. at 484).  Plaintiff has failed to show that the ALJ erroneously concluded that her reported symptoms were not entirely credible.

### 3.    Cane and/or Walker

Plaintiff next asserts that the record supports her use of a cane or walker.  ECF Dkt. #14 at 18.  Specifically, Plaintiff states that she testified that she ambulated with a walker or cane and the ALJ recognized that she had a medically determinable impairment that could produce the pain symptoms.  *Id.* (citing Tr. at 20, 49-50, 60-61).  Plaintiff states that "[n]o physician has stated that [she] does not need a cane or walker, even though she can walk on occasion without assistive devices."  *Id.*  Continuing, Plaintiff avers that the evidence does not support a conclusion that she

did not require a cane or walker, and remand is necessary to determine whether an assistive device is medically necessary and should be included in the RFC finding. *Id.* at 19.

Defendant contends that Plaintiff's walker had not been prescribed and her alleged need for a walker has little support in the medical records. ECF Dkt. #17 at 14-15. Continuing, Defendant states that while Plaintiff presented on two occasions with a walker, she also presented to doctors without an assistive device and with a steady gait. *Id.* at 15 (citing Tr. at 439, 450, 469, 484, 501). Defendant also states that no notes were made regarding Plaintiff's use of an assistive device and no such device was recommended over the course of multiple visits with Dr. Srivastava. *Id.* (citing Tr. at 458-59, 476, 491-92). Further, Defendant notes that Dr. Srivastava stated that Plaintiff had no limitations during an appointment. *Id.* (citing Tr. ast 459). Finally, Defendant asserts that SSR 96-9p states:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking and standing, and describing the circumstances for which it is needed.

*Id.*

Plaintiff's argument is without merit. While Plaintiff asserts that a cane or walker was medically necessary, she fails to cite any medical evidence in support of this claim. Instead, Plaintiff argues that no physician stated that she did not need a cane or walker. The absence of medical evidence indicating that Plaintiff did not need to use a cane or walker does not support her assertion that she needed to use an assistive device, but rather supports the more reasonable conclusion that no physician felt that she needed an assistive device to ambulate. Additionally, while Plaintiff testified that she could not ambulate without a cane or walker, the record establishes that she appeared at medical appointments without a assistive device and was able to ambulate. *See* Tr. at 450, 459, 469, 484. Moreover, the ALJ properly determined that Plaintiff was less than fully credible, as discussed above, and was therefore not obligated to accept her testimony as wholly truthful. Accordingly, the Court declines to remand this case to determine whether an assistive device was medically necessary.

### B.     New Evidence

Plaintiff also asserts that new and material evidence warrants remand of this case. ECF Dkt. #14 at 19. The alleged new and material evidence is records from January 2016 relating to a right femoral puncture, placement of a catheter in the aorta, pelvic angiogram, and placement of a catheter in the left femoral artery with left lower runoff. *Id.* Continuing, Plaintiff asserts that the evidence is new as the procedure was performed shortly before the hearing and was not available to her at the time of the hearing. *Id.* at 20. Plaintiff claims that the evidence is material since there is a reasonable probability that a different conclusion would have been reached if the evidence had been available at the time of the hearing since the ALJ was influenced by the fact that she had declined invasive surgery. *Id.* at 21.

Defendant asserts that evidence received by the Appeals Council is not considered for substantial evidence review and can only be used to justify a remand under sentence six of 42 U.S.C. § 405(g). ECF Dkt. #17 at 15 (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). Continuing, Defendant states that contrary to Plaintiff's contention, the records at issue were considered by the Appeals Council as the exhibit list included the exhibit at 12F. *Id.* Next, Defendant argues that even if this evidence was not considered by the Appeals Council, it does not justify remand. *Id.* at 16. Defendant asserts that the procedure was diagnostic and did not indicate a worsening of Plaintiff's condition. *Id.* Further, Defendant states that Plaintiff had the same procedure performed two times prior to January 2016, in September 2013 and December 2013, and the January 2016 testing produced similar results. *Id.*

Plaintiff's argument is without merit. As an initial matter, it appears that the Appeals Council did consider the alleged new and material evidence when denying Plaintiff's request for review.[4] Contrary to Plaintiff's assertion, the Appeals Council considered Exhibit 12F, listed as containing twenty-nine pages, which included the records of the January 2016 procedure. *See* Tr.

---

[4]Notably, Plaintiff, who was represented by counsel, does not indicate that she notified the ALJ of the procedure performed on January 8, 2016. *See* ECF Dkt. #14. The ALJ issued the decision on January 22, 2016, two weeks after Plaintiff underwent the procedure that produced the alleged new and material evidence. Tr. at 10. Plaintiff now asks the Court to remand this case based on evidence that was created after the hearing, but prior to the ALJ's decision being issued. Plaintiff does not state that the ALJ was afforded an opportunity to consider this evidence prior to issuing the decision.

at 5. The Appeals Council explained that it was not considering eighty-three pages of records from April 3, 2016 to August 8, 2016. *Id.* at 2. Rather, the Appeals Council indicated that it considered the additional evidence listed on the Order of Appeals Council, which included the Cleveland Clinic records from November 10, 2015, to January 9, 2016. *Id.* at 5.

Moreover, the record shows that Plaintiff underwent two procedures similar to the procedure performed in January 2016. *See* Tr. at 358, 360, 559. Plaintiff has failed to show how the January 2016 procedure constitutes material evidence as the ALJ was aware of these two prior procedures performed in 2013 when the decision was issued. The Court finds that there is not a reasonable probability that Defendant would have reached a different disposition if the evidence from January 2016 was presented to the ALJ. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). At the time of the ALJ's decision, Plaintiff had undergone procedures that were similar in nature to the January 2016 procedure, which the ALJ was aware of at the time of the hearing. *See* Tr. at 358, 360, 559. Plaintiff has failed to show that this evidence is material and, accordingly, the Court declines to remand this case.

**VI.** **CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: March 12, 2018                    */s/George J. Limbert*
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE